IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHANEL INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2218-K |
| | § | |
| CHRISTIAN SALVATORE NY | § | |
| CORP., LINNYS INC., and | § | |
| LINDSAY B. CASTELLI, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Chanel Inc. filed a motion for final default judgment against Defendants Christian Salvatore NY Corp. and Linnys Inc. *See* Dkt. No. 17.

United States District Judge Ed Kinkeade has referred this motion to the undersigned magistrate judge. *See* Dkt. No. 19.

The undersigned now enters the following findings of fact, conclusions of law, and recommendation that the Court deny without prejudice the motion for a final default judgment against Christian Salvatore NY Corp. and Linnys Inc.

**Background**

This case concerns alleged violations of the Lanham Act as to Chanel's trademarks. *See* Dkt. No. 1 at 1. Chanel is a company incorporated in New York and owns multiple trademarks that "are symbols of Chanel's quality, reputation, and goodwill." Dkt. No. 17 at 7-8, s*ee* Dkt. No. 18 at App. 40. Chanel asserts that its marks qualify as famous marks under 15 U.S.C. § 1125(c)(1). *See* Dkt. No. 17 at 8.

Defendants Christian Salvatore NY ["CSNY"] and Linnys Inc. are companies incorporated in New York. *See* Dkt. No. 17 at 9. Both CSNY and Linnys are operated by Lindsay Castelli. *See* Dkt. No. 18 at App. 96.

Chanel alleges that both CSNY and Linnys sold products bearing one or more of Chanel's trademarks. *See* Dkt. No. 17 at 8. Chanel hired a private investigator to visit the Dallas Market Center, where she encountered CSNY selling products with Chanel's trademarks and ordered products to her home in this district. *See* Dkt. No. 18 at App. 121-28. The private investigation firm and plaintiff's lawyer also obtained evidence of Linnys and CSNY selling products with the alleged trademark in their online stores and advertising said products on their Facebook pages. *Id.* at App. 52-79, 124-25, 157-59, 167-70.

Chanel filed suit against CSNY, Linnys Inc., and Lindsay Castelli on October 5, 2022. *See* Dkt. No. 1. Summons was issued to Linnys, CSNY, and Castelli, and an affidavit of service was filed for Linnys Inc. and Castelli. *See* Dkt. No. 5; Dkt. No. 11; Dkt. No. 12.

Chanel filed a motion to extend time to file an answer for each of the three defendants, but the three defendants did not file an answer. *See* Dkt. No. 7.

Chanel filed a motion for default judgment against all defendants. *See* Dkt. No. 9. Because Castelli filed for bankruptcy, the Court stayed Chanel's claims against Castelli. *See* Dkt. No. 14.

The Clerk of the Court entered default against CSNY and Linnys. *See* Dkt. No. 15. Chanel now moves for final default judgment and applies for a permanent injunction against CSNY and Linnys. *See* Dkt. No. 17.

## Legal Standards

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2).

> In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*
>
> The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

*Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for

its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co.*, 2013 WL 145502, at *2-*3. The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch Ins. Co.*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.* Further, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey,* 161 F.3d at 893.

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen.,*

*Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

## Analysis

### I. <u>The Court has subject matter jurisdiction.</u>

Chanel has shown that the Court has subject matter jurisdiction.

This Court has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action[] arising under the … laws … of the United States." 28 U.S.C. § 1331. Chanel alleges trademark infringement, counterfeiting, dilution, and false designation of origin under the Lanham Act, a federal law. *See* Dkt. No. 17 at 14-16.

Chanel also brings claims for trademark infringement under Texas common law. *See id.* at 14. This Court should exercise supplemental jurisdiction over the Texas law claims as they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see* Dkt. No. 1 at 1.

Chanel also asserts that this Court has diversity jurisdiction, but the undersigned disagrees. Diversity jurisdiction is appropriate when the amount in

controversy exceeds $75,000 and the parties are citizens of different states. *See* 28 U.S.C. § 1332(a).

Corporations are citizens "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Chanel Inc. is a corporation incorporated in New York and with its principal place of business at Nine West 57th Street, New York, New York 10019. *See* Dkt. No. 1 at 2. Chanel states that CSNY and Linnys are incorporated in New York, making them citizens of New York. *Id.* And, so, there is not complete diversity of citizenship between the parties as diversity jurisdiction requires.

II.    The Court has personal jurisdiction over Linnys but does not have personal jurisdiction over CSNY.

Chanel has shown the Court has personal jurisdiction over Linnys but not over CSNY.

"[T]he Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that… he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state." *Cont'l Mach. Co., Inc.*

*v. Korn*, No. 3:19-CV-769-L, 2020 WL 521092, at *3 (N.D. Tex. Jan. 16, 2020). "A judgment without personal jurisdiction is void" and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*, 242 F.3d at 324.

Chanel has not established personal jurisdiction over CSNY due to improper service of process. *See Rogers v. Hartford Life & Acc. Ins. Co.,* 167 F.3d 933, 940 (5th Cir. 1999) (discussing that a district court needs proper service of process for personal jurisdiction).

In a motion that Chanel filed and that was signed as "Agreed" by "Lindsay Bullock, president" on behalf of the three defendants, Chanel states that "Defendant Christian Salvatore Ny Corp has waived service and agreed to a date of November 30, 2022 to file an Answer or otherwise respond to the Original Complaint." Dkt. No. 7 at 1.

Summons was issued to CSNY, and Chanel provides an invoice for service of process on CSNY, a fee calculation for attempted service of process and "prepar[ing] emails regarding acceptance of service and Answer extension", and a declaration of Chanel's attorney stating defendants waived service of process, citing the motion to extend time. Dkt. No. 18 at App. 23; *see* Dkt. No. 5; Dkt. No. 7; Dkt. No. 18 at App. 16, 20, 38.

But this evidence does not include a filed waiver of service with the court. Federal Rule of Civil Procedure 4(d)(1) requires a request of a waiver of service to

> A) be in writing and be addressed: (i) to the individual defendant; or (ii) for a defendant subject to service under Rule 4(h), to an officer, a

managing or general agent, or any other agent authorized by
appointment or by law to receive service of process; (B) name the court
where the complaint was filed; (C) be accompanied by a copy of the
complaint, 2 copies of the waiver form appended to this Rule 4, and a
prepaid means for returning the form; (D) inform the defendant, using
the form appended to this Rule 4, of the consequences of waiving and
not waiving service; (E) state the date when the request is sent; (F) give
the defendant a reasonable time of at least 30 days after the request was
sent—or at least 60 days if sent to the defendant outside any judicial
district of the United States—to return the waiver; and (G) be sent by
first-class mail or other reliable means.

FED. R. CIV. P. 4(d)(1).

Because Chanel has not provided the executed waiver of service, the
undersigned cannot determine if the waiver complied with Rule 4. *See id.*

Although a non-lawyer cannot represent a corporation in federal court, *see
Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993); *Memon v. Allied Domecq
QSR*, 385 F.3d 871, 873 (5th Cir. 2004), Rule 4(d)(1)(A)(ii) allows "an officer, a
managing or general agent, or any other agent authorized by appointment or by law
to receive service of process" to validly execute a written waiver of service. FED. R.
CIV. P. 4(d)(1)(A)(ii); *accord Henderson v. Republic of Tex.*, 672 F. App'x 383, 385 (5th
Cir. 2016).

But, although, "unlike service of process for purposes of establishing personal
jurisdiction, service of a request of waiver of formal service might be effective … even
if a plaintiff does not strictly comply with every formalistic requirement of the rule,"
Chanel must still make some showing that a proper waiver of service was executed.
*Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 508 (5th Cir. 2004). In applying
Rule 4, courts have found that "Rule 4's requirements are strictly construed" and "the

waiver form must be filed with the court." *Gonzales v. Horizontal Wireline Servs.*, LLC, No. 5:15-CV-883-DAE, 2017 WL 11068269, at *5 (W.D. Tex. May 30, 2017) (finding service improper when summons had not been returned executed and plaintiffs did not file a waiver of service with the court); *see also Carter v. L. Offs. of Regent & Assocs.*, No. 4:21-CV-704, 2021 WL 5748898, at *2 (S.D. Tex. Oct. 8, 2021) (finding improper service when plaintiff mailed a waiver of service to defendants but "never filed any signed waivers or otherwise indicated Defendants ha[d] executed them").

Without a proper waiver of service, the Court should deny without prejudice Chanel's motion for default judgment against CSNY at this time. Although Federal Rule of Civil Procedure 4(m) allows only 90 days for a plaintiff to serve a defendant, the Court "may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service" even without good cause. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *see* FED. R. CIV. P. 4(m). Because Chanel contends that CSNY has waived service of process, the undersigned recommends that the Court grant Chanel an additional 30 days to file a signed waiver of service or to otherwise establish proper service of process in CSNY, as required for the Court to exercise personal over this defendant. *See Carter v. L. Offs. of Regent & Assocs.*, No. 4:21-CV-704, 2021 WL 5748898, at *2 (S.D. Tex. Oct. 8, 2021) (giving pro se plaintiff additional 30 days for service of process when plaintiff "attempted to comply with the service rules").

The undersigned finds that the Court has personal jurisdiction over Linnys Inc. as Linnys has minimum contacts with the forum state, the suit arises out of those

contacts, and the exercise of jurisdiction over Linnys is "fair or reasonable." *Cont'l Mach. Co., Inc.*, 2020 WL 521092, at *3.

Linnys has minimum contacts with Texas. CSNY operated a booth in the Dallas Market Center at 2100 North Stemmons Freeway, Dallas, Texas 75207. *See* Dkt. No. 18 at App. 122. After determining the CSNY booth was selling alleged infringing products, Chanel's private investigator firm, the Texas Department of Public Safety, and Homeland Security Investigations, seized said products. *See id.* at App. 2. The investigator firm found a tag on a product with the name "Linnys." *See id.* at App. 3, 11. The tag had Linnys's website, email, and Instagram handle. *See id.* at 11.

The Fifth Circuit has found personal jurisdiction when a defendant instructed an agent to sell their product in a booth in the Dallas Market Center and the agent sold the product to Texas residents at the booth. *See McFadin v. Gerber*, 587 F.3d 753, 763 (5th Cir. 2009). Although Chanel's private investigator claimed that Castelli stated she only "offered product ordering as opposed to cash and carry sales at the booth" because she took the product on display with her to other markets, the evidence supports a finding that Linnys still intended to sell to Texas residents by operating a booth in Dallas Market Center. *See* Dkt. No. 18 at App. 125. While there is no evidence as to whether CSNY sold any product with the Linnys's tag to Texas residents, the undersigned finds that allowing CSNY to sell Linnys's products – even if products were mailed to buyers from CSNY – is sufficient to establish minimum contacts such that Linnys should anticipate being haled into Texas courts. Linnys

Inc. cannot claim ignorance CSNY sold its product where CSNY and Linnys are both operated by Castelli.

Because Linnys intended CSNY to sell its products to Texas consumers, exercising personal jurisdiction over Linnys is both fair and reasonable.

III. **The procedural requirements for default judgment against Linnys Inc. have <u>been met.</u>**

Chanel has satisfied the prerequisites for entry of default judgment against Linnys:

- Linnys was served on October 8, 2022. *See* Dkt. No. 11.

- The Clerk of the Court entered default against Linnys on March 7, 2023. *See* Dkt. No. 15.

- Because Linnys Inc. is not a natural person, it cannot be a minor or incompetent person or in military service.

And Rule 55(b)(2) requires that a party have written notice of the application if it has appeared in the case. *See* FED. R. CIV. P. 55(b)(2). Since Linnys Inc. has not appeared in the case, notice is not required.

IV. <u>Chanel's pleadings support default judgment against Linnys Inc.</u>

The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendant, by its default, admits the plaintiff's well-pleaded allegations of fact. *See id.*

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards

governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 505 F.2d 1200, 1206 (5th Cir. 1975)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)). The pleading must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" but have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 638 (2009) (quoting *Twombly*, 550 U.S. at 547).

Chanel brings claims against CSNY and Linnys Inc. for federal trademark infringement, federal trademark counterfeiting, false designation of origin, federal dilution, and common law trademark infringement. *See* Dkt. No. 1. In all claims, Chanel refers to defendants collectively, making it difficult to determine with specificity which violations each company committed. *See id.*

The undersigned will address each claim in turn to determine if Linnys's alleged liability for each claim is supported by well-pleaded allegations and has a sufficient basis in the pleadings.

A. Federal Trademark Infringement

To show trademark infringement under the Lanham Act, the plaintiff must provide evidence that there is "ownership in a legally protectible mark, and… must show infringement by demonstrating a likelihood of confusion." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008).

Chanel has alleged ownership in a legally protectible mark. Chanel provides the federal registration information for their trademarks along with the contention that the marks have never been assigned or licensed to the defendants. *See* Dkt. No. 1 at 7-8*; Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("Registration of a mark with the PTO constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services.").

Chanel has also sufficiently alleged that Linnys's behavior created a likelihood of confusion. When determining likelihood of confusion, the Fifth Circuit looks to a list of non-exhaustive factors:

> (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendants' intent; (7) actual confusion; and (8) degree of ca[r]e exercised by potential purchasers. *American Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.2008) (citing *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986); *Sun–Fun Products v. Suntan Research & Dev.*, 656 F.2d 186, 189 (5th Cir.1981)) (cleaned up).

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009).

In assessing likelihood of confusion, "no one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citation omitted). When the infringing marks are identical to the plaintiff's trademark, an analysis of all factors is not necessary. *See Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 788 (W.D. Tex. 2009). But as Chanel alleges that some marks are similar and some are identical, the undersigned will fully analyze the "digits of confusion." *See id.*; Dkt. No. 1 at 10-11.

### (1) Strength of the mark

> A trademark's strength is determined by the classification of the mark and the degree to which it is recognized in the marketplace. *Am. Rice*, 518 F.3d at 330. Marks are classified as: generic, descriptive, suggestive, or arbitrary and fanciful, with 'the strength of a mark, and its protection, increase[ing] as one moves away from generic and descriptive marks toward arbitrary marks.' *Id.* (citing *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984) ). Marketplace recognition depends on advertising, length of time in business, public recognition, and uniqueness. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698-99 (S.D. Tex. 2009) (citation omitted).

*Vogue Tyre & Rubber Co. v. Rivas*, No. 3:17-cv-3198-S-BK, 2018 WL 3853712, at *3 (N.D. Tex. July 18, 2018).

Chanel has sufficiently alleged its mark is arbitrary to Chanel's products and widely recognized. *See* Dkt. No. 1 at 5-8. Chanel asserts that it is a "leader in the industry of luxury clothing" and that its mark is famous and easily identified. *Id.* at 5. Chanel's trademarks do not describe or relate to the types of products Chanel sells, making the marks arbitrary. *See generally* 2 MCCARTHY ON TRADEMARKS AND UNFAIR

COMPETITION § 11.13 (5th ed.). The strength of Chanel's mark, as alleged, weighs in favor of finding that Chanel has sufficiently alleged a likelihood of confusion, supporting a default judgment.

(2) Similarity of design between the marks

Similarity of the marks "is determined by comparing the marks' appearance…and meaning." *Elvis Presley Enterprises,* 141 F.3d at 201. Chanel alleges that defendants have sold products with "substantially similar" and "virtually identical" marks to the Chanel marks, and products with the "exact copies" of the Chanel trademarks. *See* Dkt. No. 1 at 8, 10-11. Chanel's pleadings sufficiently allege that the defendants' marks are anywhere from very similar to identical to Chanel's marks. The similarity of the marks, as alleged, weighs in favor of finding that Chanel has sufficiently alleged a likelihood of confusion, supporting a default judgment.

(3) Similarity of the products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Chanel sells clothing branded with its marks, "including shirts, … sweaters, hats, and hair bands." Dkt. No. 1 at 6. Chanel alleges that Linnys sells these same types of products (e.g. clothing) using Chanel's trademarks. *See id.* at 4. The similarity between the products, as alleged, weighs in favor of finding that Chanel has sufficiently alleged a likelihood of confusion, supporting a default judgment.

(4) Identity of retail outlets and purchasers

-15-

Courts look to the similarities between the retail outlets and the purchasers of the products to assess likelihood of confusion. *See Vogue Tyre & Rubber Co. v. Rivas*, No. 3:17-CV-3198-S (BK), 2018 WL 3853712, at *4 (N.D. Tex. July 18, 2018). Chanel pleads that the purchasers of both Linnys goods and Chanel's goods are the "consuming public". *See* Dkt. No. 1 at 9. Chanel has not provided enough information about the similarity of Linnys booth and Chanel retailers to analyze this factor fully, so the undersigned finds this factor, as alleged, to be neutral.

(5) Similarity of advertising media used

The more similar the parties' advertising is, the more likely there is a likelihood of confusion. *See Vogue*, 2018 WL 3853712, at *4. Targeting the same group of customers can also create an inference there is a similarity in advertising. *See id.* Chanel alleges that Linnys has "misappropriate[ed] … Chanel's advertising ideas in the form of the Chanel Mark." *See* Dkt. No. 1 at 9. This factor, as alleged, weighs in favor of finding a likelihood of confusion.

(6) The defendant's intent

In analyzing a defendant's intent, courts consider whether the defendant "intended to derive benefits from [a plaintiff's] reputation by using … the mark." *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 196 (5th Cir. 2018). Absence of intent typically results in the Court finding the factor neutral. *See Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 296 (5th Cir. 2020).

Chanel alleges that Linnys is "offering for sale their products with the knowledge that such goods will be mistaken for the genuine, high quality products

offered for sale by Chanel." Dkt. No. 1 at 9. Chanel further alleges that the defendants used Chanel's marks "knowing and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on the goodwill and reputation of Chanel." *Id.* It is logical to conclude that the defendants put Chanel's marks on their products with the intent that consumers would buy it because of recognizing the mark.

This factor, as alleged, weighs in favor of finding that Chanel has sufficiently alleged a likelihood of confusion, supporting a default judgment.

(7) Actual confusion

Finding actual confusion is not necessary to find trademark infringement. *See Elvis Presley Enterprises*, 141 F.3d at 203. Even if a plaintiff cannot show a sale resulted because of the confusion, "infringement can be based upon confusion that creates initial consumer interest." *Id.*; *see* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:6 (5th ed.).

Chanel alleges that Linnys's behavior is "likely to cause and actually [is] causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products." Dkt. No. 1 at 16. While Chanel has not alleged actual confusion with specificity, it has alleged actual confusion but not much, if at all, beyond conclusory assertions. And so the undersigned finds this factor, as alleged, to be, at best, neutral.

(8) Degree of care exercised by potential purchasers

-17-

In examining the degree of care exercised by potential purchasers, courts often look to the price of each parties' goods. *Savage Tavern, Inc. v. Signature Stag*, LLC, 589 F. Supp. 3d 624, 656 (N.D. Tex. 2022). A buyer of luxury goods seeking the genuine product will "exercise caution." *Id.* at 657. If the product is at a price suspiciously low, it indicates the product may not be genuine. *See id.* at 656-57. "[T]he lower the price of the item, the less care consumers will exercise in making purchasing decisions." *Id.* at 657.

Chanel is seller of luxury, high quality goods. *See* Dkt. No. 1 at 5. Chanel does not provide the price of defendants' counterfeit goods but states they are of "substantially different" quality than genuine Chanel products. *Id.* at 9. Customers of Chanel will likely exercise care in searching for genuine products, and it is unclear if customers of defendants will exercise the same amount of care in buying defendants' products. This factor may weigh against finding a likelihood of confusion in considering Chanel's typical customer but is not dispositive based on the minimal allegations of defendants' customers.

Balancing the "digits of confusion," the undersigned finds that Chanel has sufficiently pleaded likelihood of confusion. As alleged, Chanel's marks are strong, the products similar, and the defendants' intent to benefit from Chanel's reputation clear.

As Chanel has sufficiently alleged ownership of the marks and likelihood of confusion, the undersigned finds default judgment appropriate against Linnys on Chanel's trademark infringement claim.

Chanel's claim for federal trademark counterfeiting also warrants default judgment against Linnys. "To state a claim for trademark counterfeiting, a plaintiff must allege that: (1) defendants infringed a registered trademark in violation of [15 U.S.C.] § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit[.]" *Haggar Clothing Co. v. Sai Lakshmi Indus. Pvt. Ltd.*, 2009 WL 2868443, at *5 (N.D. Tex. Sept. 3, 2009). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

As discussed above, Chanel alleges that defendants have infringed on Chanel's validly registered trademarks. Chanel has also alleged that defendants' products used "exact copies" of Chanel's marks and have sold products "bearing counterfeits of the Chanel Marks." Dkt. No. 1 at 8, 12. While it is unclear how much notice Linnys had of its counterfeiting, Chanel has pleaded that Linnys used the marks intentionally to gain business based on Chanel's reputation. *See id.* at 9; *Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-cv-3022-L, 2020 WL 4678438, at *7 (N.D. Tex. July 28, 2020) (finding plaintiff's claim for federal trademark counterfeiting survived a motion to dismiss when "the marks [were] identical and that [a defendant] had notice of its alleged infringement").

Chanel properly alleges that Linnys is liable for federal trademark counterfeiting on the well-pleaded complaint.

Chanel's claim for false designation of origin also warrants default judgment against Linnys. Under Section 43(a) of the Lanham Act, "the ultimate test is whether

the public is likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (Stevens, J., concurring) (citation omitted). This is the same test as likelihood of confusion. *See Better Keiki, LLC v. MairicoDirect*, No. 4:17-CV-00850, 2018 WL 5305571, at *4 (E.D. Tex. Aug. 29, 2018) ("[T]he facts shown by Plaintiff with regard to infringement provide the necessary evidence to support the finding that Defendants have also violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125."); *Viahart, LLC v. Chickadee Bus. Sols., LLC*, No. 6:19-CV-406-JCB, 2021 WL 6333033, at *4 (E.D. Tex. July 2, 2021) ("'To be successful on a trademark-infringement claim, a 'plaintiff must first 'establish ownership in a legally protectible mark, and second, ... show infringement by demonstrating a likelihood of confusion.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010). A claim under 15 U.S.C. § 1114 requires both of these elements to be met, but a claim under 15 U.S.C. § 1125(a) requires only the second element to be met."). As Chanel has sufficiently alleged a likelihood of confusion, it has properly alleged false designation of origin.

Chanel's claim for Texas common law trademark infringement also shares the same elements as federal trademark infringement. *See Transparent Energy*, 2020 WL 4678438, at *6 ("Federal unfair competition, false designation of origin, and false association claims, as well as Texas common law trademark infringement claims, all have the same elements as trademark infringement under the Lanham Act."); *Viahart,* 2021 WL 6333033, at *7 ("The same analysis for federal trademark-

infringement and counterfeiting claims applies to those claims under Texas common law.").

As Chanel has sufficiently alleged federal trademark infringement, it has also properly alleged infringement under Texas common law.

B. Federal Dilution

To establish federal dilution, Chanel must show that "(1) it owns a famous and distinctive mark; (2) [a defendant] has commenced using a mark in commerce that is diluting [a plaintiff's] mark, (3) the similarity between [a defendant's] mark and [a plaintiff's] mark gives rise to an association between the marks; and (4) the association is likely to impair the distinctiveness of [a plaintiff's] mark or harm the reputation of [a plaintiff's] mark." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 548 (5th Cir. 2015). Dilution by tarnishment relies on "the association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

Chanel has sufficiently pleaded trademark dilution. Chanel has alleged that its marks are famous and distinctive. Chanel alleges that it has registered the marks, "extensively used, advertised, and promoted" the marks, invested substantial resources in promoting the marks, and the public widely recognizes the marks. *See* Dkt. No. 1 at 5, 8; *see generally Viahart,* 2021 WL 6333033, at *9. Chanel states that its marks were famous before the defendants "imported, offered for sale, or sold" their infringing products, alleging the first requirement for federal dilution. Dkt. No. 1 at 15. Chanel also alleges that defendants' use of the trademarks will cause consumers

-21-

to believe Chanel has authorized defendants' products or is associated with defendants, meeting the second requirement for federal dilution. *See id.* at 9.

Chanel has pleaded that the association of Chanel with defendants will tarnish its marks. "Tarnishing can occur when plaintiff's mark is associated with a low quality product." *See Viahart*, 2021 WL 6333033, at *9. Chanel alleges that the defendants' infringing products are of different quality than genuine Chanel products, and these allegations are sufficient to find dilution. *See id.* (holding that "when [a plaintiff] … alleged that Defendants' products are of low quality and that Defendants use marks identical to [a plaintiff]," even "somewhat vague" allegations are sufficient for default judgment).

Chanel has adequately alleged federal dilution, and so the undersigned finds default judgment appropriate against Linnys on the federal dilution claim.

## V. Consideration of other factors counsel denying without prejudice the motion for default judgment on Chanel's claims against Linnys Inc.

Although default judgment is a harsh remedy, Linnys's failure to answer Chanel's complaint, especially after being granted additional time to respond, supports default judgment on Chanel's claims. *See* Dkt. No. 7.

There has not been substantial prejudice against Linnys, as it was properly served and aware of the complaint. *See* Dkt. No. 11.

There are clearly established grounds for default because Linnys failed to answer Chanel's complaint.

There is no indication that Linnys's default was caused by good faith mistake or excusable neglect. And so the court would not feel obligated to set aside the default on Linnys's motion. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

But Chanel requests statutory damages under 15 U.S.C. § 1117(c) in the amount of $3,750,000, attorney's fees in the amount of $16,311, costs in the amount of $1,275.48, and post-judgment interest on all monetary amounts awarded at the maximum rate allowed by law. *See* Dkt. No. 17 at 28.

In cases of multiple defendants when only one is in default, the Court normally declines to enter default judgment against the defaulting defendant until a decision has been made on the merits of the remaining defendants. *See Nasufi v. King Cable Inc.*, No. 3:15-CV-3273-B, 2017 WL 6497762, at *3 (N.D. Tex. Dec. 19, 2017). Courts can still grant default judgment against one defendant if other factors make default judgment appropriate. *See id.* In this case, a court may decline to award damages until the Court makes a decision regarding the non-defaulting defendant. *See id.*

But Chanel seeks not only damages but permanent injunctive relief against both CNSY and Linnys based on the same allegations. Because Chanel has alleged all damages and injunctive relief against both defendants, the undersigned recommends that the Court exercise its discretion to defer granting a default judgment or permanent injunctive relief against Linnys until the Court can rule on any renewed motion for default judgment against CSNY after it has had time to cure the service of process issue. If the Court "did otherwise, it might enter judgment for the plaintiff against the defaulting defendant, only to later enter judgment against

the plaintiff on the same claim against the other defendant." *Wieck v. Synrg. Royce LLC*, No. A-17-CV-599 LY, 2018 WL 620048, at *1 (W.D. Tex. Jan. 30, 2018), *rep. & rec. adopted*, 2018 WL 4732083 (W.D. Tex. Aug. 17, 2018).

## Recommendation

The Court should deny without prejudice Chanel's motion for a final default judgment [Dkt. No. 17] against Defendants Christian Salvatore NY Corp. and Linnys Inc. and grant Chanel an additional 30 days after entry of this order to cure the defects regarding service of process on Defendant Christian Salvatore NY Corp.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

-24-

DATED: November 3, 2023

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE